**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MONTEZ COOPER,

       Petitioner,                Civil No. 2:08-CV-14644
                                  HONORABLE NANCY G. EDMUNDS
v.                             UNITED STATES DISTRICT JUDGE

MILLICENT WARREN,

       Respondent,

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Montez Cooper, ("petitioner"), presently confined at the Thumb Correctional Facility

in Lapeer, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254. In his *pro se* application, petitioner challenges his convictions for first-degree

felony murder, M.C.L.A. 750.316; conspiracy to commit first-degree premeditated murder,

M.C.L.A. 750.157a; assault with intent to do great bodily harm less than murder, M.C.L.A.

750.84; felon in possession of a firearm, M.C.L.A. 750.224f; and possession of a firearm

during the commission of a felony [felony-firearm], M.C.L.A. 750.227b. For the reasons

stated below, petitioner's application for writ of habeas corpus is **DENIED.**

### I. Background

Petitioner was convicted of the above offenses following a jury trial in the Genesee

County Circuit Court, in which he was tried jointly with co-defendant Shawn Burnett. [1]

The evidence as gleaned from the record establishes the following. Three of

---

[1] Petitioner was also convicted of second-degree murder as a lesser included offense of a charge of first-degree premeditated murder, but this conviction was vacated on appeal on Double Jeopardy grounds.

petitioner's co-defendants, Royal Kamien, Greg Calhoun, and Corey Wilson testified against petitioner, in exchange for reduced charges. The evidence established that on January 17, 2003, at around 5:00 p.m., petitioner was at co-defendant Shawn Burnett's house, with Burnett, Kamien, Calhoun, Wilson, Germaine Burnett, and Jonnard Nelson. The men snorted cocaine. Shawn Burnett, Germaine Burnett, Wilson, and petitioner had firearms. Shawn Burnett complained about someone stealing guns from his home and stated that he would like to "whip his ass." During this conversation, petitioner stated that he would like to talk to the person[who had stolen the firearms]. Shawn Burnett made a few telephone calls.

The victim, Johnnie McFadden, subsequently came over to the house. Shawn Burnett whispered something to petitioner, who put on some gloves, punched the victim in the face, and threw him on the couch. Shawn Burnett ordered the victim at gunpoint to take off his clothes and kicked him in the face. Petitioner struck the victim with a baseball bat. Germaine Burnett also hit him with the bat. While the victim was removing his clothes, petitioner also stuck him several times with a knife. The victim told the men that a man named "Quasi" had the guns. Shawn Burnett told everyone at the house that he wanted them to "kick his ass." The victim's hand was swollen and he was bleeding from the head. Royal Kamien testified that petitioner kicked the victim.

Shawn Burnett told the victim that he was going to "fuck him how he fucked me." Burnett ordered the victim, who was naked, to get in a "doggie style position." Shawn Burnett then inserted a broom handle into the victim's anus. Kamien testified that petitioner remarked, "he liked it, his dick's getting hard." Jonnard Nelson also sodomized the victim with the broom and then with a bottle. During this time, Burnett continued to have his gun

pointed at the victim.

After this initial assault, petitioner gave the victim a tray of cocaine to sniff and threatened to give him a "shot to his chest" if he dropped it. Petitioner then poured a liquid substance on the victim, which caused him to scream. Royal Kamien testified the liquid had suds and smelled like bleach. Corey Wilson described it as boiling water that smelled like bleach. Petitioner also threw a lit cigarette into the victim's mouth.

While the assault was taking place, someone knocked on the door. Shawn Burnett told Germaine Burnett to get rid of whoever was there. Shawn Burnett then helped the victim get off the floor and placed him into a living room closet. Germaine Burnett came into the house with four girls. Kamien testified that he heard a scratching noise coming from the closet. Petitioner told the girls that there was "was a puppy pit bull in there." When the closet door popped open, Kamien pushed the victim back into the closet and closed the door. Germaine Burnett then slid a love seat in front of the closet door so that it couldn't open. After about an hour and a half, the girls left. Shawn Burnett opened the closet door and the victim fell out. Shawn Burnett ordered the victim to put his clothes on, before walking him out to the car. Before he left the house with the victim, Shawn Burnett whispered to both Corey Wilson and petitioner. Shawn Burnett then drove off in a car with the victim, Calhoun, and Nelson.

Greg Calhoun testified that the men drove to Pierson and Fleming Streets, where Shawn Burnett told Calhoun to take the victim's clothes off. Burnett asked the victim about the guns. When the victim told him he didn't know anything about the guns, Burnett told the victim that he was going to make him walk home. The men drove over to Hamilton and Proctor Streets, where the victim was ordered out of the car by Burnett. Burnett told the

victim "you don't know my name." When the victim exited the car, Burnett gave Calhoun a gun and ordered him to kill the victim. Jonnard Nelson grabbed the gun away and left the car. Calhoun then heard a gunshot. Nelson followed the victim over a fence. Shawn Burnett got out of the car and followed them. Calhoun witnessed Shawn Burnett shoot the gun three times. Nelson told Burnett to leave him there. The victim was found shot by a house on Hamilton Street. The victim died of his gunshot wounds.

Burnett and Calhoun returned to Burnett's house. Burnett asked Calhoun to take Kamien to get Nelson. Calhoun and Kamien drove to Hamilton and Lawndale Streets and saw the police. The two men went back to Burnett's house. On the way back, Calhoun asked Kamien to let him out of the car. Kamien went back to Shawn Burnett's home and was asked where Calhoun was and whether he had seen Jonnard Nelson. When Kamien returned to the house alone, petitioner began to look at the window with a worried or "paranoid" expression. When Nelson finally returned, petitioner looked very happy and had a "Kool Aid smile on his face." Burnett and Nelson had a brief discussion, before Shawn Burnett told the others they needed to clean up the house. The persons at the house pulled up the carpet and put items into garbage bags. Shawn Burnett cleaned out the closet that the victim had been locked into. Petitioner assisted with cleaning up the house. Shawn Burnett and petitioner subsequently had a discussion about getting a hotel room.

Kamien and Germaine Burnett went to the Super Motel 8 in Burton and purchased a room. Germaine Burnett stayed at the room and Kamien drove back to Shawn Burnett's house.

Petitioner and several of his co-defendants drove to the hotel in Burton, Michigan. En route to the hotel, they stopped at a house on Stewart Street. Lashell Childs and

Lakisha Johnson were at the Stewart Street when petitioner walked in. When the occupants of the home ordered him to leave, petitioner stated that he could, "kill everybody up in here, and won't nobody know anything." Petitioner also also stated, "you don't know what I'm capable of doing." One of the occupants saw a gun in petitioner's pocket.

Several of the co-defendants along with petitioner eventually arrived at the motel. Shawn Burnett, Nelson, Wilson, and petitioner were all armed with firearms. Nelson and petitioner left the motel and returned with Lakisha Johnson and Lashell Childs. Lakisha Johnson testified that she was raped in the motel bathroom by Shawn Burnett. The other men began leaving the motel room. Lashell Childs told Shawn Burnett that she was not going to tell anyone. Burnett then shot Lashell Childs in the head and shot Johnson in her legs and "butt." [2]

Petitioner's conviction was affirmed on appeal. *People v. Cooper,* No. 2005 WL 839474 (Mich.Ct.App. April 12, 2005); *lv. den.* 474 Mich. 934; 706 N.W. 2d 18 (2005). Petitioner then filed a post-conviction motion for relief from judgment, which was denied by the trial court. The Michigan Court of Appeals and the Michigan Supreme Court subsequently denied his post-conviction appeal pursuant to M.C.R. 6.508(D). *People v. Cooper,* No. 282525 (Mich.Ct.App. March 18, 2008); *lv. den.* 482 Mich. 973; 754 N.W. 2d 879 (2008); *reconsideration den.* 482 Mich. 1037; 769 N.W. 2d 204 (2008).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The trial court abused its discretion by joining for trial two incidents that involve separate murders in different cities.

---

[2] Some of these additional facts the Court obtained from the Plaintiff-Appellee's Brief on Appeal, pp. 6-7, 17-19 [this Court's Dkt. # 7-27], which this Court then verified by reading the relevant transcript pages.

II. It was error for the trial court to deny defendant's motion for directed verdict on felony murder.

III. It was error for the trial court to deny defendant's motion for directed verdict on first degree premeditated murder.

IV. It was error for the trial court to deny defendant's motion for directed verdict for conspiracy to commit first degree murder.

V. It was ineffective assistance of counsel to not object to a certified record of defendant's felonious assault being admitted into evidence.

VI. It was an abuse of discretion for the trial court to admit into evidence firearms not related to the crimes charged.

VII. Defendant's sentences for two murders involving the same victim constitutes double jeopardy.

VIII. The trial court abused its discretion in denying post-conviction relief where it had previously erred by relying on evidence to deny defendant's motion for directed verdict which only showed movement incidental to committing the assault, not kidnapping, and was insufficient to prove felony murder.

IX. Defendant was denied a fair trial and impartial appeal of right and due process of the law where a panel of the Michigan Court of Appeals affirmed his felony murder conviction by applying an unreasonable determination of the facts that was contrary to the evidence presented at trial.

X. Defendant was denied due process of law and a fair trial by the cumulative effect of several instances of prosecutorial misconduct: (a) the prosecution improperly supplied the jury with a personal opinion that defendant has a mental disorder, and urged his conviction because of it. (b) the trial prosecutor improperly vouched for the truthfulness and credibility of the State's key witness. (c) the prosecutor improperly classified defendant to the jury as being the "enforcer" a term commonly used as a reference to the muscle for a gang or other criminal organization.

XI. Defendant was denied a fair trial by the trial court's aiding and abetting instructions to the jury which negated the malice element of felony murder which the jury was required to find before it could convict on the crime.

XII. Defendant was denied a fair trial and due process of the law by the cumulative effect of the trial errors that occurred.

## II. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

## III. Discussion

### A. Claim # 1.  The improper joinder claim.

Petitioner first contends that his constitutional rights were violated when the trial court permitted joinder of two incidents that involved separate murders in two different cities.

The Michigan Court of Appeals rejected petitioner's claim:

Here, both defendants committed the Flint and Burton offenses as part of a single scheme or plan. They both participated in the torture, rape, kidnapping, and murder of McFadden in Flint and, to avoid capture and dispose of evidence, they fled to Burton armed with guns. There Burnett encountered Johnson and Childs and, using the same gun used to kill McFadden, he shot and killed Childs and shot and wounded Johnson, continuing his killing spree. As the trial court noted, much of the same witness testimony and evidence would be admissible in both the Flint and Burton cases, thus consolidation of these related cases for a single trial did not constitute an abuse of discretion.
*People v. Cooper,* No. 2005 WL 839474, at * 1.

Improper joinder does not, by itself, violate the federal constitution. *United States v. Lane,* 474 U.S. 438, 446, n. 8 (1986). Misjoinder rises " to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *Id.*

In considering whether the denial of severance of charges amounted to an error warranting relief in a habeas proceeding, the issue is not whether the failure to sever counts for separate trials was a violation of a state rule of procedure, but whether the failure to sever denied the petitioner due process of law under the Fourteenth Amendment. *See Davis v. Coyle,* 475 F. 3d 761, 777 (6th Cir. 2007). In order to obtain federal habeas relief. a habeas petitioner must show that the misjoinder of separate criminal charges in a single trial in state court resulted in prejudice so great as to deny the petitioner his right to a fair trial. *Id.*

"[U]nder Michigan law, severance is required only when a defendant shows that it is necessary to avoid prejudice to his substantial rights." *Clark v. McLemore,* 291 F. Supp. 2d 535, 545 (E.D. Mich. 2003)(*citing* M.C.R. 6.121(C)). "[T]here is no absolute right to a separate trial, and joint trials are strongly favored 'in the interest of justice, judicial

economy and administration.'" *Id.* (*quoting People v. Etheridge*, 196 Mich. App. 43, 52; 492 N.W. 2d 490 (1992)). Severance should only be granted "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *People v. Hana*, 447 Mich. 325, 359-60; 524 N.W. 2d 682 (1994)). Finally, under M.C.R. 6.120(B), a court must sever offenses that are not related as defined in MCR 6.120(B). MCR 6.120(B) defines related offenses that are those "based on (1) the same conduct, or (2) a series of connected acts or acts constituting part of a single scheme or plan."

Petitioner was not prejudiced by the joinder of the charges, because both the trial court and the Michigan Court of Appeals found that evidence of each of the charges would have been admissible against the other charges had each case been tried separately. In petitioner's case, even if the charges involving the two separate incidents had been tried separately, evidence from each crime would have been admissible in the trial of the other incident pursuant to M.R.E. 404(b) because of the common scheme or plan. Petitioner was therefore not prejudiced by the joinder of the charges in this case. *See U.S. v. Jacobs,* 244 F. 3d 503, 507 (6th Cir. 2001). Moreover, the trial court gave the jurors cautionary instructions, in which the trial court instructed the jury on the elements of each offense and told them to consider each crime separately. (Tr. XII, p. 216). The trial court also instructed that: "If any evidence was limited to one defendant you should not consider it as to any other defendants." (*Id.* at p. 215). Finally, the court also instructed that "Each defendant in this case is entitled to have his guilt or innocence decided individually. If any evidence was limited to one defendant you should not consider it as to other any other defendants." (*Id.* at p. 227). The trial court's cautionary instructions adequately cured any

possible prejudice from the joinder of the separate charges at one trial. *Id.* Petitioner is not entitled to habeas relief on his first claim.

### B. Claims # 2, 3, and 4. The sufficiency of evidence claims.

The Court will consolidate petitioner's second, third, and fourth claims for judicial economy. Petitioner claims that the trial court erred in denying his motion for a directed verdict of acquittal on the first-degree felony murder, first-degree premeditated murder, and conspiracy to commit first-degree murder charges. [3]

In reviewing a habeas petitioner's claim that the evidence was insufficient to convict him, a federal court is "bound by two layers of deference to groups who might view facts differently than" the court would. *Brown v. Konteh,* 567 F. 3d 191, 205 (6th Cir. 2009). First, as in all sufficiency of evidence challenges, a court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In doing so, the court does not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute its judgment for that of the jury. *Id.* (*citing United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir.1993)). Therefore, even if a federal habeas court might have not voted to convict a defendant had it participated in the jury deliberations, it must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all factual disputes in favor of the prosecution. Secondly, even if a federal habeas court concludes

---

[3] Petitioner's arguments regarding the trial court's failure to direct a verdict of acquittal should be construed by a reviewing court as an attack on the sufficiency of evidence to convict. *See e.g. United States v. Cope,* 312 F. 3d 757, 778 (6th Cir. 2002).

that a rational trier of fact could not have found a habeas petitioner guilty beyond a reasonable doubt, on habeas review, the court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Brown,* 567 F. 3d at 205; *See also Tucker v. Palmer,* 541 F. 3d 652, 666 (6th Cir. 2008); *cert. den.* 130 S. Ct. 109 (2009)(citing 28 U.S.C. § 2254(d)(1)). A habeas court does not substitute its own judgment for that of the finder of fact. *See Crenshaw v. Renico,* 261 F. Supp. 2d 826, 832 (E.D. Mich. 2003). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16.

Petitioner first claims that the trial court should have directed a verdict of not guilty on the felony murder charge, because the victim was not murdered during the perpetration of a kidnapping, because he was not killed while he was locked in the closet or at Shawn Burnett's house. In rejecting the claim, the Michigan Court of Appeals stated the following:

> This argument is without merit. It is clear from the record evidence that McFadden, who was unarmed, beaten, raped, and tortured, was not free to leave the house on Alma and had no choice but to follow the directions of both defendants Cooper and Burnett, who were armed with guns, when they forced him to get in a vehicle and leave the house on Alma where he was killed in another location. That McFadden was moved from the house to another location for the murder does not give rise to two different kidnapping offenses and defendant Cooper has failed to cite any supporting legal authority for this position. McFadden was kidnapped by defendants Cooper and Burnett and, during the course of the kidnapping, he was murdered. *People v. Cooper,* No. 2005 WL 839474, at * 2.

> Under Michigan law, the elements of first-degree felony murder are:

> (1) the killing of a human being;
> (2) with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result (i.e., malice);
> (3) while committing, attempting to commit, or assisting in the commission

11

of one of the felonies enumerated in the felony murder statute.

*Matthews v. Abramajtys,* 319 F. 3d 780, 789 (6th Cir. 2003)(*citing to People v. Carines*, 460 Mich. 750, 759; 597 N.W. 2d 130 (1999)).

To support a finding under Michigan law that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

1. the crime charged was committed by the defendant or some other person;
2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and
3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

*Long v. Stovall,* 450 F. Supp. 2d 746, 753 (E.D. Mich. 2006)(*citing Carines*, 460 Mich. at 757-58).

Under Michigan law, to convict a defendant of felony murder under an aiding and abetting theory, the prosecutor must show that someone killed the victim during the underlying predicate felony, that the defendant assisted that person in killing the victim, and that the defendant either intended to commit the crime or he knew when he gave the assistance that the other person intended to commit the crime. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 858 (E.D. Mich. 2003)(*citing People v. Smielewski*, 235 Mich. App. 196, 207; 596 N.W. 2d 636, 642 (1999)).

In the present case, there was sufficient evidence for a rational trier of fact to convict petitioner of felony murder under an aiding and abetting theory. The evidence established that petitioner was present at Shawn Burnett's house when Burnett discussed being angry about guns that had been taken from his home. When the victim arrived at the house, petitioner began beating the victim with both his fists and a baseball bat, before sticking him with a knife. Several of the co-defendants were armed with weapons. Petitioner later threatened to shoot the victim if he dropped a tray of cocaine. Petitioner

subsequently poured a liquid on the victim which caused him to scream and threw a lit cigarette into his mouth. Petitioner had a discussion with Burnett before Burnett lead the victim out of the house at gunpoint. Petitioner's participation in the kidnapping, while armed with, and using, a baseball bat, a knife, and a gun, helped set into motion events that were likely to cause death or great bodily harm, so as to support his conviction for felony murder. *See e.g. Watson v. Renico,* No. 2006 WL 1307678, * 5-6 (E.D. Mich. May 11, 2006). Malice can also be inferred from the fact that petitioner assisted in the beating and torture of the victim. *Id.* Moreover, petitioner was also aware that his co-defendants removed the victim from the house at gunpoint and ordered him into a car. The intent for felony murder "can be inferred from the aider and abettor's knowledge that his cohort possesses a weapon." *See Hill v. Hofbauer,* 337 F. 3d 706, 719-20 (6th Cir. 2003). Because petitioner helped to set into motions events that were likely to cause great bodily harm or death to the victim, a rational trier of fact could find him guilty of felony murder.

To the extent that petitioner quarrels with the Michigan Court of Appeals' determination that the movement of the victim from the house to the car did not give rise to two separate kidnapping offenses under Michigan law, petitioner would not be entitled to habeas relief. State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975). What is essential to establish an element of a crime, like the question whether a given element is necessary, is a question of state law, of which federal habeas review is not available. *See Sanford v. Yukins,* 288 F. 3d 855, 862 (6th Cir. 2002). Moreover, a federal court on habeas review must distinguish a sufficiency of evidence claim from state law claims which are disguised as *Jackson* claims. *Id.* A federal habeas court must therefore defer to a state appellate court's construction of the elements of state

crimes. *See Coe v. Bell*, 161 F. 3d 320, 347 (6th Cir. 1998).

In his third claim, petitioner contends that the trial court should have directed a verdict on the first-degree premeditated murder charge. The jury, however, did not convict petitioner of this charge, but of the lesser included offense of second-degree murder. Moreover, the Michigan Court of Appeals vacated the second-degree murder conviction on Double Jeopardy grounds. *People v. Cooper*, No. 2005 WL 839474, at * 5. Petitioner's third claim has been mooted by the fact that his second-degree murder conviction was vacated by the Michigan Court of Appeals.

Article III, § 2 of the United States Constitution requires the existence of a case or controversy through all stages of federal judicial proceedings. This means that, throughout the litigation, the petitioner "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). An incarcerated habeas petitioner's challenge to the validity of his or her conviction satisfies the case-or-controversy requirement because the incarceration constitutes a concrete injury which can be redressed by the invalidation of the conviction. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998). Once the convict's sentence has expired, however, some concrete and continuing injury other than the now-ended incarceration or parole -- some "collateral consequence" of the conviction -- must exist if the suit is to be maintained in federal court and not considered moot. *Id.* When the issuance of a writ of habeas corpus would have no effect on a petitioner's term of custody, and would impose no collateral legal consequences, the habeas petitioner fails to present a justiciable case or controversy within the meaning of Article III of the Federal constitution. *See Ayers v. Doth,* 58 F. Supp.

14

2d 1028, 1034 (D. Minn. 1999). "[M]ootness results when events occur during the pendency of a litigation which render the court unable to grant the requested relief." *Carras v. Williams,* 807 F. 2d 1286, 1289 (6th Cir. 1986).

Petitioner's challenge to the submission of the first-degree premeditated murder conviction to the jury has been rendered moot by virtue of the fact that the Michigan Court of Appeals vacated petitioner's conviction on the lesser included offense of second-degree murder on appeal, which is the most relief that this Court could grant in petitioner's case. *See Hayes v. Evans,* 70 F. 3d 85, 86 (10th Cir. 1985); *McFall v. Rees,* 786 F. 2d 1165 (Table);No. 1986 WL 16539, * 1 (6th Cir. February 6, 1986); *Cumbo v. Eyman,* 409 F. 2d 400 (9th Cir. 1969).

In his fourth claim, petitioner contends that the trial court should have directed a verdict of acquittal on the conspiracy to commit first-degree murder conviction. In rejecting this claim, the Michigan Court of Appeals stated the following:

> Here, there was ample evidence from which the jury could infer that defendant Cooper was part of a conspiracy with at least defendant Burnett to intentionally, and with premeditation and deliberation, kill McFadden. As previously discussed, defendant Cooper had numerous private discussions with defendant Burnett before, during, and after different stages of the crime, e.g., when McFadden arrived at the house before the beating began, during the course of the beating, before McFadden was led out of the house at gunpoint, and after defendant Burnett returned from the murder scene, which leads to an inference that he and Burnett agreed to, and intended to, kill McFadden. Defendant Cooper's actions after the murder was completed, including cleaning up of the house to get rid of evidence and making arrangements to stay at a motel to avoid capture, are additional considerations. The trial court properly denied the motion.
> *People v. Cooper*, No. 2005 WL 839474, at * 4.

Under Michigan law, a conspiracy is defined as "a mutual agreement or understanding, express or implied, between two or more persons to a commit a criminal

act." *Cameron v. Birkett,* 348 F. Supp. 2d 825, 839 (E.D. Mich. 2004)(*quoting People v. Carter*, 415 Mich. 558, 567; 330 N.W.2d 314 (1982)). "[A] two-fold specific intent is required for conviction: intent to combine with others, and intent to accomplish the illegal objective." *Carter*, 415 Mich. at 568. Direct proof of an agreement is not required, nor is proof of a formal agreement necessary. Rather, it is sufficient that the circumstances, acts, and conduct of the parties establish an agreement. *People v. Cotton*, 191 Mich. App. 377, 393; 478 N. W. 2d 681 (1991). A conspiracy may be proven by circumstantial evidence or may be based on inference. *Id.*

Under Michigan law, "[t]o prove conspiracy to commit murder, it must be demonstrated that each conspirator had the requisite intent to commit the murder." *Cameron,* 348 F. Supp. 2d at 839 (*quoting People v. Buck*, 197 Mich.App. 404, 412; 496 N.W.2d 321, 327 (1992), *rev'd in part on other grounds sub nom. People v. Holcomb*, 444 Mich. 853, 508 N.W.2d 502 (1993)). "The prosecution must demonstrate that the conspirators deliberated and planned the crime with the intent to kill the victim." *Id.*

In the present case, there was ample evidence for a rational trier of fact to conclude that petitioner conspired with the others to kill the victim. When Shawn Burnett complained about someone stealing guns from his home and stated that he would like to "whip his ass, " petitioner indicated that he would like to talk to this person. When the victim arrived at the house, petitioner began beating him, first with his fists and then with a baseball bat. Petitioner later began sticking the victim with a knife. Petitioner offered active encouragement to the other co-defendants when they sodomized the victim with a broom handle and bottle. Petitioner subsequently threatened to shoot the victim if he dropped a tray of cocaine that petitioner had handed him. Petitioner later threw bleach or

another corrosive liquid on the victim and also threw a lit cigarette into his mouth. Petitioner spoke briefly with Shawn Burnett, right before Burnett lead the victim away in a car at gunpoint. From petitioner's active involvement throughout the entire episode of the beating and torture of the victim, a rational trier of fact could conclude that petitioner preplanned the victim's murder, so as to support his conviction for conspiracy to commit murder. *Cameron,* 348 F. Supp. 2d at 840. Morever, petitioner's acts of cleaning up Burnett's house and finding a motel for the co-defendants to hide established a "continuing attempt to hide the conspiracy." This evidence of petitioner's consciousness of guilt also supported an inference that petitioner conspired with the others to kill the victim. *Id.* Petitioner is not entitled to habeas relief on his fourth claim.

### C. Claim # 5. The ineffective assistance of counsel claim.

Petitioner next contends that he was denied the effective assistance of counsel because his attorney stipulated to the admission of petitioner's prior conviction for felonious assault so as to establish one of the elements of the charge of felon in possession of a firearm.

To prevail on his ineffective assistance of counsel claim, petitioner must show that the state court's conclusion regarding his claim was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

Defense counsel did not render ineffective assistance by stipulating to petitioner's

17

prior conviction regarding the felon in possession of a firearm charge, because petitioner has made no showing that this stipulated factor was not readily provable simply by reference to the public records. *U.S. v. Fuller,* 768 F. 2d 343, 347 (1st Cir. 1985). Moreover, even if trial counsel were somehow deficient for stipulating to the prior conviction, petitioner cannot show that he was prejudiced by counsel's stipulation, so as to support an ineffective assistance of counsel claim, in light of the substantial evidence against him in this case. Petitioner is not entitled to habeas relief, because the Michigan courts' rejection of his claim constituted a reasonable application of *Strickland. See Pearl v. Cason,* 219 F. Supp. 2d 820, 829 (E.D. Mich. 2002).

### D.  Claim # 6.  The irrelevant evidence claim.

Petitioner next contends that the firearms found at the time of his arrest three days after the crimes constituted irrelevant evidence. The Michigan Court of Appeals rejected petitioner's claim, finding that the evidence was relevant. *People v. Cooper,* No. 2005 WL 839474, at * 4.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000); *See also Stephenson v. Renico,* 280 F. Supp. 2d 661, 666 (E.D. Mich. 2003). Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d

446, 453 (6th Cir. 2005)(*quoting Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)).

The Michigan Court of Appeals determined that this evidence was relevant under Michigan law. This Court must defer to that determination. Petitioner's claim that this evidence was irrelevant does not raise due process issues of constitutional magnitude or entitle him to habeas corpus relief. *See Oliphant v. Koehler*, 451 F. Supp. 1305, 1308 (W.D. Mich. 1978). Petitioner fails to show that the trial court's admission of this evidence deprived him of his fundamental right to a fair trial or resulted in any other violation of his constitutional rights. Accordingly, petitioner is not entitled to habeas corpus relief with respect to this claim. *Stephenson,* 280 F. Supp. 2d at 667.

### E. Claim # 7. The Double Jeopardy claim.

Petitioner next contends that his sentences for two murders involving the killing of one victim violates Double Jeopardy. As mentioned above, petitioner's second-degree murder conviction was vacated on direct appeal. Petitioner's Double Jeopardy claim has been mooted by virtue of the fact that the trial court corrected any constitutional infirmity by vacating the second-degree murder conviction. *See Harris v. Metrish,* 2006 WL 1313804, *6 (E.D. Mich. May 12, 2006)(*citing Nichols v. Moore,* 923 F. Supp. 420, 423-24 (W.D.N.Y. 1996).

### F. Claims # 8, 9, 10, 11, and 12. The procedurally defaulted claims.

Respondent contends that petitioner's remaining claims are procedurally defaulted because petitioner raised these claims for the first time in his post-conviction motion and failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by M.C.R. 6.508(D)(3).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a

defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.

The Michigan Court of Appeals and the Michigan Supreme Court denied petitioner leave to appeal because petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." Petitioner did not raise any of his post-conviction claims on direct review. [4] Under the circumstances, the Michigan courts clearly invoked the provisions of M.C.R. 6.508(D)(3) to procedurally bar petitioner's claims. *See e.g. Guilmette v. Howes,* 591 F.3d 505, 508-09 (6th Cir. 2010).

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the

---

[4] Although petitioner's eighth claim challenges the sufficiency of evidence, it was different than the sufficiency of evidence claims that were raised on his direct appeal. "[I]nsufficiency of the evidence is too broad and malleable an objection" to hold that challenging the sufficiency of the evidence on one theory in the state courts is enough to preserve for federal habeas review a challenge to the sufficiency of evidence on a factually and legally distinct theory never fairly presented to the state courts. *See Johnson v. Alabama*, 256 F. 3d 1156, 1170 (11th Cir. 2001). Moreover, to the extent that petitioner's ninth claim is simply a rehash of the sufficiency of evidence claims that he raised on his direct review, this claim would be rejected for the same reasons that the Court rejected petitioner's second through fourth claims.

absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998).

With respect to his eighth through twelfth claims, petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. Petitioner, however, has not shown that appellate counsel was ineffective.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard. "
> *Id.* at 463 U.S. at 754.

Moreover, "[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 463 U.S. at 753 (citations omitted).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the

"process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (*quoting Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F. 3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting his eighth through twelfth claims. Appellate counsel filed a brief on appeal which raised the first seven claims that petitioner has raised in his habeas petition. Petitioner has not shown that appellate counsel's strategy in presenting such claims and not raising other claims was deficient or unreasonable. Moreover, none of the claims raised by petitioner in his post-conviction motion were "dead bang winners." Because the defaulted claims are not "dead bang winners," petitioner has failed to establish cause for his procedural default of failing to raise his eighth through twelfth claims on direct review. *See McMeans v. Brigano,* 228 F. 3d 674, 682-83 (6th Cir. 2000).

In the present case, petitioner has failed to demonstrate cause to excuse the default. Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary for this Court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. at 533. Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this court to consider these claims as a ground

for a writ of habeas corpus in spite of the procedural default. Petitioner's sufficiency of evidence claims are insufficient to invoke the actual innocence doctrine to the procedural default rule. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003). Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, petitioner's remaining claims are procedurally defaulted. *Pearl,* 219 F. Supp. 2d at 828.

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable

jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.* "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right with respect to any of the claims. *Dell v. Straub,* 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: March 11, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 11, 2010, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager